Bernard Volk, Jr. v. Commissioner.
Volk v. Commissioner
Docket No. 37022.
United States Tax Court
1953 Tax Ct. Memo LEXIS 356; 12 T.C.M. (CCH) 184; T.C.M. (RIA) 53061; February 24, 1953
J. Paul Farrell, Esq., 205 National Bank Building, McKeesport, Pa., for the petitioner. Edward L. Cobb, Esq., for the respondent. MURDOCK
Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax of $15,707.51 for 1948 and $4,477.50 for 1949. The only issue for 1948 is whether $34,359.39 was deductible as interest and the only issue for 1949 is whether $7,500, an attorney's fee, was deductible as a non-business ordinary and necessary expense for the production of income within section 23 (a) (2). *357 The facts have been presented solely by a stipulation. The petitioner filed individual income tax returns for 1948 and 1949 with the collector of internal revenue for the Twenty-Third District of Pennsylvania. He claimed a deduction for interest paid in 1948 in the amount of $34,359.39 of which the Commissioner allowed $3,243.24 and disallowed the remainder of $31,116.15 as a payment "to make up a deficiency in the assets of said Estate." The petitioner was a trustee of the Estate of Pauline Auberle from prior to 1913 until his discharge on October 8, 1948. That was a charitable trust which filed no tax return for 1948. The petitioner was an undertaker and was not in the trade or business of acting as a trustee. He had control of the books and records of the trust and all accounts filed for it were prepared under his direction on the basis of information furnished by him. He filed an interim account for the period March 1, 1913 to March 4, 1931. An examiner to audit the account of the trustees was appointed on July 14, 1931 on the petition of Bishop Boyle, the ultimate recipient of the trust. The examiner, after much negotiation with the interested parties and their attorneys, *358 submitted a report to the Court in accordance with the settlement worked out by the parties. Paragraph 9 of the stipulation is as follows: "9. Some of the items in controversy, which the examiner indicated in his separate report, to the attorneys, were: "(a) The accountant paid for the years 1917 to 1930, inclusive, income taxes totaling $3,338.58. As the trust was a charitable one, it was exempted by the various income tax laws. Hence, these payments were improvident and were stricken from the credits. There was added interest on these payments, the total of which, according to the examiner's tabulation, was $1,736.12. "(b) An item of cash was withdrawn from the trust's bank account in the amount of $7,906.00 and converted to the petitioner's personal use. It was charged off on the interim account as fees. This was, in the opinion of the examiner, improper, and he indicated it would have drawn interest at 6%, amounting to $7,827.00 interest to the date of the interim accounts (Exhibit 2-B). "(c) There was one item of $5,000.00 in fees which the examiner indicated was charged twice, once in 1913 and again in 1915, which was actually a cash shortage. This item at 6% interest *359 would have accrued $5,400.00 in interest to the date of this interim account. "(d) There was an item of cash left in a savings account at interest rates varying from 3% to 4%, which could and should have been invested at higher rates of interest according to the examiner. "(e) Funds invested in Liberty Bonds drawing 4 1/4% interest were left idle long after the bonds had matured. "(f) Numerous items of principal and interest on trust mortgages were collected and retained by Stentz, petitioner's attorney, which were either unreported or charged off as fees. "(g) The Stratton property, which could have been resold for $35,000.00 in 1926, was only worth $25,000.00 at the time of the March 4, 1931 accounting by the trustee and, in addition to the loss of this $10,000.00, the $10,000.00 would have, if invested, drawn interest amounting to $3,600.00." An amended account was filed. The amount to be charged to the petitioner as trustee and his liability therefor were disputed and were not determinable until the Court entered its decree accepting the amended account. The balance of principal for distribution shown on the amended account was increased to $324,705.56 by the disallowance *360 of personal property taxes of $9,115 which were never owed by the trust. This amended account resulted in a compromise of various items mentioned in "paragraph 9" together with: "(a) Petitioner's assumption of the risk of liquidation of the real estate and mortgages at the inventoried value of the amended account. "(b) His personal acceptance of the trust's expenses of liquidation of the mortgages and real property. "(c) His assumption of the Stratton real estate at the same value it had when it was taken over on default of the original purchaser, treating it as being held as cash at 6% interest since 1913, this eliminated the credit the trustee had claimed in the account for all the expenses of taxes and upkeep during this eighteen-year period." The Court held that Volk was liable for $324,705.56 with interest at 5 per cent from July 15, 1932 until paid. Paragraph 17 of the stipulation is as follows: "17. Prior to 1948, the amounts still owing by the petitioner on the $332,184.06, per Decree of the Court dated July 20, 1932, at No. 77 August Term 1931, had been reduced to $31,116.15. On March 30, 1948, a final payment of $34,332.07 was made by the petitioner to the Trust, *361 which eliminated the aforesaid $31,116.15, and the excess thereof was applied against the payment of $3,243.24, interest referred to in the Court's opinion (Exhibit 9-I)." The petitioner on his 1948 return deducted as interest the final payment which he made in 1948 in distribution of the trust. The Commissioner concedes that $3,243.24 of that total was interest and has allowed a deduction in that amount. The petitioner contends that the entire $34,332.07 is deductible as interest. His sole argument on this point is that he was charged on the amended account with $34,332.47 representing interest to July 15, 1932 on real estate considered sold and converted by him to his own uses on March 1, 1913, that amount was included in the total with which the Court charged him pursuant to the 1932 settlement and decree, and the $34,322.47 was deductible as interest paid in 1948. This record does not justify a finding that the $34,322.07 paid in 1948 represents the 1932 item of "interest" to which the petitioner refers. The Court, in 1948, require the petitioner to pay $3,243.24 as interest on the $324,705.56 of principal fixed in 1932 and relieved him of the payment of any further interest *362 on that balance. Clearly that payment was not the "interest" to which the petitioner refers. The petitioner, in his final account, recorded the $31,116.15 balance of the 1948 payment as the final payment on the principal of the trust as fixed by the 1932 agreement and decree. Cf. . There is nothing in the record to connect any part of the 1948 payment with the item to which the petitioner refers. Paragraph 17 of the stipulation seems to preclude the petitioner. Nor is there any presumption to help him. The presumption of the correctness of the determination of the Commissioner is against him as is the presumption that the first payment is interest if not otherwise indicated, agreed or applied. . Decision on this point must go against the petitioner regardless of whether or not the 1932 item to which the petitioner refers was interest within the meaning of section 23 (b). The petitioner asked the Pennsylvania Court to reduce the rate of interest from 5 per cent, fixed in 1932, to 3 per cent. It did that in an opinion in 1948 which required the payment of $3,243.24 to bring the *363 total interest payments to 3 per cent. The petitioner paid his attorney $7,500 in 1949 for his services in getting that interest rate reduced. He claimed the $7,500 as a deduction on his 1949 return as "Attorney's Fee in connection with settlement of Pauline Auberle Estate." The Commissioner disallowed it. The petitioner argues that the reduction in the interest rate saved him from paying additional interest of approximately $50,000, and "the reduction of expense is equivalent to the production of income." He cites no supporting authority for that argument and we know of none. The reduction in the rate of interest which he was required to pay did not and could not produce income. It reduced his obligation but was not an ordinary and necessary expense paid for the production of income as those words are used in section 23 (a) (2). The Court can allow only such deductions as Congress has authorized. Cf. . Decision will be entered for the respondent.